T.C. Memo. 2008-41

UNITED STATES TAX COURT

JOYCE A. PERKINS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6521-06.          Filed February 26, 2008.

    R determined a deficiency of $6,582 in P's Federal
income tax for 2003.  R also determined an accuracy-related
penalty of $1,316.40 pursuant to sec. 6662(a) and (b)(1),
I.R.C.

    <u>Held</u>: P is liable for the deficiency but not the sec.
6662, I.R.C., penalty.

<u>John P. Konvalinka</u>, for petitioner.

<u>John R. Bampfield</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case is before the Court on a petition for redetermination of a $6,582 deficiency in Federal income tax that respondent determined for petitioner's 2003 taxable year. Respondent also determined an accuracy-related penalty pursuant to section 6662(a) and (b)(1) in the amount of $1,316.40.[1]  The issues for decision are:

(1) Whether $26,400 paid to petitioner in 2003 by her ex-husband was includable in petitioner's 2003 taxable income as alimony under section 71(a) and (b); and

(2) whether petitioner is liable for an accuracy-related penalty under section 6662(a) and (b)(1) in the amount of $1,316.40.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts and the accompanying exhibits are hereby incorporated by reference into our findings.  At the time she filed her petition, petitioner resided in Chattanooga, Tennessee.

On July 1, 1998, petitioner and her husband, Dr. Thornton D. Perkins (Dr. Perkins), entered into a marital dissolution agreement (MDA), which was approved by the Chancery Court of

---

[1] All section references are to the Internal Revenue Code of 1986, as amended and in effect for the taxable year at issue. The Rule references are to the Tax Court Rules of Practice and Procedure.

Hamilton County, Tennessee, and incorporated into that court's final divorce decree.  The first few pages of the MDA are dedicated to the division of marital property.  Under the heading "Alimony", paragraph 14(a) of the MDA provided that Dr. Perkins would pay to petitioner, until May 9, 2004, when she would reach the age of 59-1/2, alimony in futuro in an amount equal to 20 percent of Dr. Perkins's earned income.  Paragraph 14(b) of the MDA stated that Dr. Perkins's obligation to pay alimony in futuro would cease upon the death of petitioner, upon petitioner's remarriage, or at Dr. Perkins's death should it occur before May 9, 2004.  Under paragraph 14(f), the MDA provided that if Dr. Perkins was to become disabled and receive benefits from his professional disability policy, petitioner was to receive 20 percent of the policy benefits until Dr. Perkins's alimony obligation terminated on May 9, 2004.

At some point prior to January 1, 2003, Dr. Perkins became disabled and started receiving payments under his professional disability policy.  During 2003, Dr. Perkins paid to petitioner $26,400 of his policy benefits for that year.[2]

Petitioner filed, in a timely manner, a Form 1040, U.S. Individual Income Tax Return, for the 2003 taxable year, on which she failed to report any of the $26,400 paid to her by Dr.

---

[2]  That amount was paid to petitioner in 12 monthly installments of $2,200.

Perkins.[3]  On March 13, 2006, respondent issued a notice of
deficiency.  Petitioner then filed a timely petition with this
Court.  A trial was held on March 7, 2007, in Knoxville,
Tennessee.

## OPINION

I.  Taxability of the $26,400 in Disability Benefits Received by
    Petitioner Pursuant to Paragraph 14(f) of the MDA

As a general rule, the Commissioner's determination of a
taxpayer's liability for an income tax deficiency is presumed
correct, and the taxpayer bears the burden of proving that the
determination is improper.  See Rule 142(a); Welch v. Helvering,
290 U.S. 111, 115 (1933).  But see sec. 7491(a).

"Payments incident to a divorce traditionally fell into one
of two categories for [the purpose of] Federal tax law: property
settlements or alimony."  Rogers v. Commissioner, T.C. Memo.
2005-50.  Payments characterized as property settlements are
generally neither deductible from the income of the payor nor
includable in the income of the payee.  See Yoakum v.
Commissioner, 82 T.C. 128, 134 (1984).  The opposite is true for
payments characterized as alimony.  See sec. 215(a) ("In the case
of an individual, there shall be allowed as a deduction an amount
equal to the alimony or separate maintenance payments paid during
such individual's taxable year."); sec. 71(a) ("Gross income

---

[3]  That return was prepared by John P. Konvalinka, the
attorney representing petitioner in this case.

includes amounts received as alimony or separate maintenance payments.").

For Federal income tax purposes, alimony is defined as any payment in cash that satisfies all of the following four requirements: (a) Such payment is received by, or on behalf of, a spouse under a divorce or separation instrument; (b) the divorce or separation instrument does not designate such payment as a payment which is not includable in gross income under section 71 and not allowable as a deduction under section 215; (c) the payee spouse and the payor spouse are not members of the same household at the time the payment is made; and (d) there is no liability to make any such payment, or a substitute for such payment, in cash or property, after the death of the payee spouse. Sec. 71(b)(1)(A)-(D). The characterization of the payments as "alimony" in the divorce or separation instrument does not establish whether those payments are treated as alimony for Federal income tax purposes; the test is whether the four statutory requirements are met. See Hoover v. Commissioner, 102 F.3d 842, 844 (6th Cir. 1996) ("The mere use of the word 'alimony' does not affect the tax consequences of payments."), affg. T.C. Memo. 1995-183.

In this case, the first three requirements of section 71(b)(1) are clearly satisfied with respect to the payments at

issue.[4]  Because the MDA is silent as to whether Dr. Perkins's obligation under paragraph 14(f) of the MDA would have survived petitioner's death, the MDA itself does not resolve explicitly the question of whether the fourth and final requirement of section 71(b)(1) has been satisfied.  As a consequence, we must look to Tennessee law in order to properly characterize the payments at issue in this case.

Under Tennessee law, two types of alimony are relevant in this case: alimony in futuro and alimony in solido.[5]  The purpose of alimony in futuro "is to provide financial support to a spouse who cannot be rehabilitated."  Burlew v. Burlew, 40 S.W.3d 465, 471 (Tenn. 2001).  Alimony in futuro terminates "automatically and unconditionally upon the death or remarriage of the recipient" or upon the occurrence of a stated contingency, such as a specific termination date.  Tenn. Code Ann. sec. 36-5-

---

[4] That is true because (1) those payments were received under an MDA, (2) the MDA did not designate the payments as not includable in gross income under sec. 71 and not allowable as a deduction under sec. 215, and (3) petitioner and Dr. Perkins were not members of the same household when the payments at issue were made.

[5] See Tenn. Code Ann. sec. 36-5-101 (2003); Burlew v. Burlew, 40 S.W.3d 465, 471 (Tenn. 2001).  In 2005, Tenn. Code Ann. sec. 36-5-101 was deleted in its entirety and replaced.  The deleted section was amended and recodified in Tenn Code Ann. sec. 36-5-121.  In addition to alimony in futuro and alimony in solido, Tennessee law provides for rehabilitative alimony and transitional alimony, neither of which is relevant in this case because they were not provided for in the MDA (transitional alimony was not even introduced into the Tennessee Code until 2003, long after the parties entered into the MDA).

101(a)(2)(B) (2003); see <u>Waddey v. Waddey</u>, 6 S.W.3d 230, 232 (Tenn. 1999). Alimony in solido, which is often awarded to cure an imbalance in the distribution of marital property, is an award of a definite sum of alimony that "may be paid in installments provided the payments are ordered over a definite period of time and the sum of the alimony to be paid is ascertainable when awarded." <u>Waddey v. Waddey</u>, <u>supra</u> at 232. Unlike alimony in futuro, alimony in solido does not automatically terminate upon the death of either party. See <u>Burlew v. Burlew</u>, <u>supra</u>. This Court has observed that alimony in solido is roughly equivalent to a property settlement and that alimony in futuro is roughly equivalent to alimony as defined in section 71(b). See <u>Rogers v. Commissioner</u>, <u>supra</u>.

"The determinative factor in deciding whether an award of spousal support is alimony in solido, is the intent of the parties, or the court, that the award be for a fixed amount." <u>Bryan v. Leach</u>, 85 S.W.3d 136, 146 (Tenn. Ct. App. 2001). In contrast, alimony in futuro "lacks sum-certainty due to contingencies affecting the total amount of alimony to be paid." <u>Waddey v. Waddey</u>, <u>supra</u> at 232. In addition, the Supreme Court of Tennessee has held that distinguishing alimony on the basis of "the definiteness of the term of the award * * * actually reflects the essential purpose of each award". <u>Self v. Self</u>, 861 S.W.2d 360, 362 (Tenn. 1993).

As explained below, we conclude that Dr. Perkins's obligation under paragraph 14(f) of the MDA was an obligation to pay alimony in futuro, which would not have survived petitioner's death. Consequently, the $26,400 in disability benefits petitioner received in 2003 is taxable alimony under section 71.

Because the Tennessee courts have held that the definiteness or indefiniteness of an award of alimony determines whether it is alimony in solido or alimony in futuro, we begin by discussing that issue. Petitioner argues that Dr. Perkins's obligation was alimony in solido because "the amount is calculable when awarded in that the amount to be paid to Petitioner can be calculated based upon the date that Thornton Perkins became disabled." Respondent argues that the award was alimony in futuro because it was contingent on Dr. Perkins's becoming disabled and because it was for an uncertain amount. We agree with respondent.

When the parties entered into the MDA on July 1, 1998, Dr. Perkins's obligation under paragraph 14(f) would have arisen only in the event that Dr. Perkins became disabled at some future time. Thus, Dr. Perkins's very obligation to pay petitioner a portion of his disability benefits, if he ever received any, not to mention the amount of that obligation, was not fixed and definite. By that standard, Dr. Perkins's obligation under paragraph 14(f) constituted alimony in futuro under Tennessee law. See McKee v. McKee, 655 S.W.2d 164, 165 (Tenn. Ct. App.

1983) ("The determining factor in distinguishing whether alimony is in futuro or in solido is the definiteness or indefiniteness of the amount ordered to be paid.").

Because the Tennessee courts also look to the essential purpose of the alimony award, see Self v. Self, supra at 362, we will next address that issue. Our ultimate conclusion in that regard, based largely on the relationship between paragraphs 14(a) and 14(f) of the MDA, is that the purpose of paragraph 14(f) was to oblige Dr. Perkins to pay alimony in futuro.

Robin Lyn Miller, an attorney who represented petitioner in her divorce from Dr. Perkins, testified at trial that it was her intent in negotiating the MDA that Dr. Perkins's obligation under paragraph 14(f) represent his obligation to pay petitioner for her share of a marital asset. Attorney Miller further testified that, if petitioner died before May 9, 2004, it was intended that payments made by Dr. Perkins pursuant to paragraph 14(f) of the MDA would have gone to petitioner's estate. Upon cross-examination, however, when asked whether it was just a coincidence that Dr. Perkins's obligation under paragraph 14(f) of the MDA terminated on the same day as his obligation to pay alimony in futuro--when petitioner reached the age of 59-1/2-- attorney Miller responded:

> I don't think -- it's not coincidence. Certainly she
> would have had a penalty to withdraw earlier. In
> negotiating divorce cases, you have to -- I mean, these
> are those odd asset[s] that may or may not come into

fruition, so if Dr. Perkins had died during that time that she was receiving what is clearly the alimony in futuro, she would have had no more income, and she would have had to have gone to her savings.

In our view, in light of its placement in the MDA and attorney Miller's testimony, the most reasonable construction of paragraph 14(f) of the MDA is that it represents contingency planning designed to provide an alternative source of funds from which Dr. Perkins would pay alimony in futuro in the event that he was to become disabled.[6]  The purpose of paragraph 14(f) was to ensure that Dr. Perkins would pay alimony in futuro even if he could no longer work, not to divide a marital asset.  That obligation, like Dr. Perkins's obligation under paragraph 14(a) of the MDA, constituted alimony in futuro which, pursuant to Tenn. Code Ann. sec. 36-5-101(a)(2)(B), would not have survived petitioner's death.  Because that obligation would not have survived petitioner's death, and because the other requirements of section 71(b) were met, see supra note 4, petitioner was required to include in her gross income the money she received pursuant to paragraph 14(f) of the MDA.  See sec. 71(a).

---

[6] As noted earlier, par. 14(a) of the MDA provided that Dr. Perkins would pay to petitioner, until May 9, 2004, when she would reach the age of 59-1/2, alimony in futuro in an amount equal to 20 percent of Dr. Perkins's earned income.  It is only logical to infer that payments to petitioner of a portion of Dr. Perkins's disability benefits under par. 14(f) of the MDA, also calculated at 20 percent, were intended as a substitute for the earnings lost as a result of the disability.

Finally, the MDA itself strongly suggests that the parties did not consider Dr. Perkins's potential postdivorce disability benefits to be marital property. The parties went to great lengths to divide their marital property, including household furnishings, automobiles, Dr. Perkins's profit-sharing plan, Dr. Perkins's medical practice, and the parties' individual retirement accounts. There is no mention of Dr. Perkins's disability benefits except in paragraph 14(f). In sum, we find unavailing petitioner's argument that paragraph 14(f) provided for the division of a marital asset, or alimony in solido.

The parties were in the best position to specify how they wanted the payments at issue to be classified for Federal income tax purposes.[7] Section 71 expressly permitted the parties to specify that the payments at issue would not be treated as alimony for Federal income tax purposes. See sec. 71(b)(1)(B) (providing that a payment will not be alimony if the divorce or separation instrument designates the payment as not includable in

---

[7] In fact, they did just that in par. 14(d) of the MDA with respect to temporary alimony paid to petitioner during the pendency of the divorce action. Par. 14(d) provided that the amount of temporary alimony paid was tax deductible by Dr. Perkins. Although one could argue that the parties' failure to so specify in par. 14(f) means that the parties intended the opposite with respect to payments made under par. 14(f), no such inference is warranted. The bottom line is that the parties knew how to designate payments for Federal income tax purposes and did not designate the payments to be made pursuant to par. 14(f) to be nonincludable/nondeductible.

gross income and not allowable as an alimony deduction).  As the Supreme Court of Tennessee noted in Self v. Self, supra at 364,

> In addition to the rights and obligations of the parties with respect to each other, the liability for taxes, the rights of creditors, and other significant consequences may depend upon the preciseness of the language employed in the decree.  Construction by the courts of uncertain and ambiguous language is a poor substitute for careful articulation.

## II.  Section 6662 Penalty

Subsection (a) of section 6662 imposes an accuracy-related penalty on an underpayment of tax that is equal to 20 percent of any underpayment that is attributable to a list of causes contained in subsection (b).  Among the causes justifying the imposition of the penalty are (1) negligence or disregard of rules or regulations and (2) any substantial understatement of income tax.  Section 6662(c) defines negligence as "any failure to make a reasonable attempt to comply with the provisions of this title."  "[D]isregard" is defined to include "any careless, reckless, or intentional disregard."  Id.  Under caselaw, "'Negligence is a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'"  Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).

There is a "substantial understatement" of an individual's income tax for any taxable year where the amount of the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return for the taxable year or (2) $5,000. Sec. 6662(d)(1)(A)(i) and (ii). However, the amount of the understatement is reduced to the extent attributable to an item (1) for which there is or was substantial authority for the taxpayer's treatment thereof, or (2) with respect to which the relevant facts were adequately disclosed on the taxpayer's return or an attached statement and there is a reasonable basis for the taxpayer's treatment of the item. See sec. 6662(d)(2)(B).

There is an exception to the section 6662(a) penalty when a taxpayer can demonstrate (1) reasonable cause for the underpayment and (2) that the taxpayer acted in good faith with respect to the underpayment. Sec. 6664(c)(1). Regulations promulgated under section 6664(c) further provide that the determination of reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs.

Reliance upon the advice of a tax professional may, but does not necessarily, establish reasonable cause and good faith for the purpose of avoiding a section 6662(a) penalty. See United States v. Boyle, 469 U.S. 241, 251 (1985) ("Reliance by a lay person on a lawyer is of course common; but that reliance cannot

function as a substitute for compliance with an unambiguous statute."). Such reliance does not serve as an "absolute defense"; it is merely "a factor to be considered." Freytag v. Commissioner, supra at 888. The caselaw sets forth the following three requirements in order for a taxpayer to use reliance on a tax professional to avoid liability for a section 6662(a) penalty: "(1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment." See Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002).

In this case, the notice of deficiency included the imposition of a $1,316.40 penalty under section 6662(a) and (b)(1).[8] In her arguments regarding the section 6662(a) penalty, petitioner does not contest that, in the event that the Court would find against her regarding the taxability of the alimony, she substantially understated her 2003 income tax.

Petitioner argues that she is not liable for the penalty because (1) section 71(b)(1)(D) and paragraph 14(f) of the MDA are substantial authority for her position that the $26,400 paid

---

[8] The notice of deficiency refers only to sec. 6662(a) and (b)(1). It does not refer to sec. 6662(b)(2), which provides for the imposition of a sec. 6662 penalty for any substantial understatement of income tax. Respondent raises the substantial underpayment issue in his pretrial memorandum and briefs.

to her in 2003 by Dr. Perkins was not includable in her 2003 income for Federal income tax purposes and (2) she reasonably relied on professional advice in failing to report the $26,400 paid to her in 2003 by Dr. Perkins as alimony income. Because, as explained below, we agree with petitioner that she has satisfied the requirements of the reasonable reliance exception, petitioner is not liable for a section 6662 penalty.[9]

With respect to the first prong of the Neonatology test, we conclude that petitioner has established that her attorney was a competent professional who had sufficient expertise to justify reliance. Respondent does not dispute our conclusion. See Neonatology Associates, P.A. v. Commissioner, supra at 99; see also United States v. Boyle, supra at 250-251.

With respect to the second prong of the Neonatology test, we are satisfied that the evidence of record, particularly attorney Miller's testimony, which reflects that attorney Miller consulted with attorney Konvalinka in 2004 regarding the taxability of the payments at issue in this case, demonstrates that petitioner provided necessary and accurate information in a timely manner to her tax adviser, attorney Konvalinka, regarding

_____

[9] Because we conclude that the reasonable reliance exception applies here, we need not discuss the merits of petitioner's argument regarding the substantial authority exception.

her receipt of the payments now at issue.[10]  Because petitioner's failure to report those payments is the sole basis argued by respondent to support the imposition of a penalty in this case, petitioner has satisfied the second prong of the Neonatology test.

Turning to the third prong of the Neonatology test, we conclude that petitioner has demonstrated that she actually relied in good faith on the advice of attorneys Miller and Konvalinka.  The issue in this case involves the tax consequences that flow from construction by the Court of a portion of the MDA that is ambiguous.  Petitioner, who has no discernable expertise in tax matters, relied on attorney Konvalinka, an experienced tax attorney, for the preparation of her 2003 Federal income tax return.  Attorney Konvalinka arrived at his decision to advise petitioner not to report the payments now at issue because they were not alimony within the meaning of section 71(b) following his consultation with attorney Miller.  Attorney Miller had represented petitioner in her divorce from Dr. Perkins.

---

[10] Although respondent contends that no evidence was introduced regarding when attorney Miller's alleged consultation with attorney Konvalinka occurred, we find attorney Miller's testimony sufficient to support a conclusion, logically derived from the facts and circumstances of this case, that such consultation was made prior to the filing of petitioner's 2003 Federal income tax return on April 1, 2004.  In addition, it is only logical to conclude that such consultation took place after petitioner disclosed the payments at issue in this case to attorney Konvalinka.

Petitioner was not required to second guess attorney Konvalinka's advice.  See <u>United States v. Boyle</u>, <u>supra</u> at 251 ("To require the taxpayer to challenge the attorney, to seek a 'second opinion,' or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place.").  Petitioner has therefore demonstrated reasonable cause and good faith for the underpayment.  As a result, she is not liable for an accuracy-related penalty under section 6662.

The Court has considered all of petitioner's and respondent's contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.